**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1879

_____

| | | |
|---|---|---|
| Kansas Public Employees Retirement System, | * * * | |
| Plaintiff-Appellant, | * * | Appeal from the United States District Court for the |
| v. | * * | Western District of Missouri. |
| Michael K. Russell, an individual, | * * | |
| Defendant. | * | |

_____

Submitted: January 13, 1998
Filed: March 30, 1998

_____

Before McMILLIAN, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The Kansas Public Employees Retirement System (KPERS) appeals the order of the District Court granting summary judgment to Michael Russell. The court granted summary judgment on the basis of a prior order in which it found KPERS's claims against Russell's co-defendants to be time barred. KPERS asserts that summary judgment must be reversed in light of an intervening decision of the Kansas Supreme Court. We agree and hold that KPERS's claims against Russell are timely. We therefore reverse.

I.


This litigation has been before our circuit a number of times.[1] An exhaustive recitation of the facts underlying KPERS's claims would be lengthy and, for purposes of this appeal, unnecessary.[2] We recount only the events pertinent to the disposition of this appeal.


KPERS is a statewide retirement system for certain employees of the State of Kansas. To invest KPERS's assets, Reimer & Koger Associates was appointed KPERS's agent and attorney-in-fact to buy, sell, and trade in securities. In August 1985, Russell became chairman of KPERS's Board of Trustees. Russell was a friend and business associate of Kansas City banker Frank Morgan. In 1985, Morgan and his uncle, Sherman Dreiseszun, purchased Home Savings Association of Kansas City, a troubled Missouri savings and loan. Morgan and Dreiseszun named Russell as a director. Russell had in the past borrowed large amounts from Home Savings.


Morgan invited Reimer & Koger to invest $15 million of KPERS's funds in Home Savings debentures. Russell, who was at the time a member of both KPERS's

---

[1]Prior to this, six appeals have been brought before our court. We refer to these appeals as KPERS I through KPERS VI, respectively. See KPERS v. Reimer & Koger Assoc., Inc., 4 F.3d 614 (8th Cir. 1993), cert. denied, 511 U.S. 1126 (1994); KPERS v. Reimer & Koger Assoc., Inc., 60 F.3d 1304 (8th Cir. 1995); KPERS v. Reimer & Koger Assoc., Inc., 61 F.3d 608 (8th Cir. 1995), cert. denied, 516 U.S. 1114 (1996); KPERS v. Reimer & Koger Assoc., Inc., 77 F.3d 1063 (8th Cir.), cert. denied, 117 S. Ct. 359 (1996); In re KPERS, 85 F.3d 1353 (8th Cir. 1996); KPERS v. Blackwell, Sanders, Matheny, Weary & Lombardi, L.C., 114 F.3d 679 (8th Cir. 1997), cert. denied, 118 S. Ct. 738 (1998).

[2]For a detailed account of the events leading to the filing of the lawsuit, see KPERS VI.

board and Home Savings's board, resigned from Home Savings's board. Shortly thereafter, KPERS invested $15 million in Home Savings. Russell then solicited each member of KPERS's board to approve an additional $50 million investment in Home Savings debentures. Russell represented to the board that the $50 million would be used to acquire a large St. Louis-based savings and loan. KPERS's board approved the investment.

In June 1986, Home Savings bid on the St. Louis savings and loan. By fall of 1986, Home Savings knew it had lost the bid and dropped the St. Louis acquisition from consideration. In 1991, regulators closed Home Savings and appointed the Resolution Trust Corporation (RTC) as receiver. KPERS lost its entire $65 million in principal.

KPERS initially filed suit against the Reimer & Koger defendants on June 5, 1991, in Kansas state court. On December 23, 1991, KPERS amended its petition to name as defendants Russell, various Home Savings defendants, and others. As to Russell, KPERS alleges that Russell told the other KPERS board members that the money would be used to buy the St. Louis savings and loan when, in fact, he knew the money would not be so used. Furthermore, KPERS alleges that Russell made these false statements so that Home Savings would, in turn, lend him $40 million. The Home Savings defendants impleaded the RTC, and the RTC removed the case to federal court in the Western District of Missouri.

In <u>KPERS III</u>, we held that Missouri limitation law governs the case. <u>See KPERS v. Reimer & Koger Assoc., Inc.</u>, 61 F.3d 608, 614 (8th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1114 (1996). We determined that KPERS's action was subject to Missouri's five-year statute of limitation period for fraud, <u>see</u> Mo. Rev. Stat. § 516.120(5) (1994), unless, under Missouri's borrowing statute, the action would be fully barred by a shorter statute in the state where the cause of action originated, <u>see</u>

-3-

id. § 516.190 (1994). To determine whether the claims would be barred by a shorter statute, we looked to the Kansas statutes of limitation.

When KPERS filed this lawsuit in 1991, the applicable Kansas statutes of limitation were the two-year torts statute, see Kan. Stat. Ann. § 60-513(a) (Supp. 1997), and the three-year statutory claims statute, see id. § 60-512(2) (1994). In 1992, the Kansas legislature enacted a new ten-year statute of limitation for any "action brought by, or on behalf of, [KPERS]." Id. § 60-522(a) (1994). Notwithstanding the inclusion in § 60-522 that the limitations set forth therein "are to be construed and applied retroactively," id. § 60-522(c), in KPERS III we relied on the reasoning in Harding v. Kansas City Wall Products, Inc., 831 P.2d 958 (Kan. 1992), that the legislature had not specifically expressed an intent to revive actions barred by the statute of limitations. We therefore decided in KPERS III that the statute was not effective with respect to causes of action asserted in cases filed before its enactment. See KPERS III, 61 F.3d at 614-15. Thus, we held that the ten-year statute was not applicable to this litigation and concluded that, by way of Missouri's borrowing statute, the Kansas two- and three-year statutes applied. We remanded to the District Court to determine whether KPERS's claims were time-barred under the applicable two- and three-year Kansas statutes. We denied a motion for rehearing and suggestion for rehearing en banc in KPERS III, and the Supreme Court denied certiorari. See KPERS III, 516 U.S. 1114 (1996).

On remand, all of the defendants except Russell moved for summary judgment. By way of two separate orders, the District Court granted summary judgment to the moving defendants on the grounds that KPERS's claims were barred by the Kansas two- and three-year statutes. The first order was entered in June 1996 and the second in July 1996. KPERS appealed those summary judgment orders, and argument was set for March 13, 1997. In November 1996, Russell moved for summary judgment. On March 4, 1997, the District Court entered its order granting summary judgment to

Russell. KPERS filed an appeal and moved to stay the March 13, 1997 argument so that the appeals could be consolidated. We denied the motion.

The appeal of the first two summary judgment orders became KPERS VI, wherein we affirmed summary judgment as to those defendants. See KPERS v. Blackwell, Sanders, Matheny, Weary & Lombardi, L.C., 114 F.3d 679, 692 (8th Cir. 1997), cert. denied, 118 S. Ct. 738 (1998).

Our decision, issued on May 13, 1997, rejected KPERS's claims that it was exempt from statutes of limitation because it was engaged in governmental, rather than proprietary functions. Our decision relied on precedents of the Kansas Supreme Court stating that "[m]aintaining KPERS is a proprietary function of the state," KPERS VI, 114 F.3d at 687 (quoting In re Midland Indus., 703 P.2d 840, 843 (Kan. 1985), which in turn discussed the holding of Shapiro v. KPERS, 532 P.2d 1081 (Kan. 1975)).

We denied rehearing and rehearing en banc in KPERS VI on June 12, 1997, and mandate issued June 20, 1997. The Kansas Supreme Court issued a decision on June 27, 1997, regarding the statutes of limitation applicable to KPERS. See KPERS v. Reimer & Koger Assoc., Inc., 941 P.2d 1321 (Kan. 1997). The Kansas Supreme Court held that KPERS's investment functions are governmental in nature, and, therefore, general statutes of limitation do not apply. Instead, only the ten-year statute enacted specifically for KPERS litigation is applicable. Furthermore, the court held that the ten-year statute should apply retroactively, expressly disapproving of the result we reached in KPERS III that the statute did not apply to cases filed before its enactment. See id. at 1343, 1347. Thus, when Russell's case came before this court, it was after the Kansas Supreme Court had rejected our reasoning in KPERS III and VI.

KPERS petitioned the Supreme Court for certiorari review of KPERS VI, arguing that the Supreme Court should vacate the decision in light of the intervening

Kansas case. However, the Supreme Court denied review on January 12, 1998, and KPERS VI became final.

## II.

Although KPERS VI is now final and would ordinarily be the law of the case, KPERS claims that the intervening Kansas decision should lead to a different result in its case against Russell.

The law of the case doctrine "does not apply when an intervening decision from a superior tribunal clearly demonstrates the law of the case is wrong." Morris v. American Nat'l Can Corp., 988 F.2d 50, 52 (8th Cir. 1993). The recent Kansas Supreme Court opinion is clearly such an intervening decision. The Kansas Supreme Court is a superior tribunal to decide whether a Kansas statute applies retroactively and whether KPERS acts in a governmental or proprietary function. Further, the Kansas Supreme Court unambiguously stated that the law of the case is wrong. We are therefore obligated "to apply state law . . . in accordance with the then controlling decision of the highest state court." Vandenbark v. Owens-Illinois Co., 311 U.S. 538, 543 (1941). We must reverse "on appellate review if in the meantime the state courts have disapproved of [our] former rulings and adopted different ones." Huddleston v. Dwyer, 322 U.S. 232, 236 (1944).

The Kansas Supreme Court concluded that "[t]he legislative intent is clear. The legislature intended [the ten year statute of limitation applicable to actions brought by or on behalf of KPERS] to be applied retroactively, and we hold it should be so applied. . . . [W]e disapprove of the result reached in [KPERS III]." KPERS, 941 P.2d at 1347. The ten-year statute thus applies to cases pending at the time of its enactment. In Russell's case, KPERS's claims against him were pending in 1992 when the ten-year statute of limitation was enacted. Therefore, in light of the Kansas Supreme Court decision, we now hold that the ten-year Kansas statute of limitation is the proper statute

to consider to determine whether the claims against Russell are barred under Missouri's borrowing statute.

In KPERS III we determined that if KPERS's claims are not barred under the borrowing statute by a shorter Kansas statute of limitation, the Missouri five-year statute of limitation applies. The application of Missouri's statute of limitation assumed that KPERS's functions were proprietary in nature and, thus, KPERS's claims were subject to general statutes of limitation. See KPERS VI, 114 F.3d at 687-88. But the Kansas Supreme Court held that the investment activities of KPERS are governmental in nature. See KPERS, 941 P.2d at 1343. The supreme court stated that KPERS III was "incorrectly decided and never reached a proper analysis of the underlying Kansas law on the governmental-proprietary distinction." Id. The court compared KPERS's investment activities with KPERS's obligation to each state employee with which it contracts, determining that the former is governmental in nature while the latter is proprietary in nature. See id. at 1341. "[T]he investment of KPERS funds is necessary to promote the public welfare generally and to satisfy the contractual and taxation obligations of the State of Kansas, the school districts, the municipalities, and the other governmental entities to their employees." Id.

We decided in KPERS VI that the law of the case doctrine prevented KPERS from relitigating the issue of whether KPERS is exempt from statutes of limitation. That conclusion, however, was based on the assumption that KPERS was functioning in a proprietary manner. See KPERS VI, 114 F.3d at 687-88. Under the intervening decision of the Kansas Supreme Court, KPERS's investment activities are now to be viewed as governmental in nature. In light of this change, we must revisit in this appeal the issue of whether KPERS is subject to Missouri's statute of limitations.

We start with the fundamental proposition that "at common law statutes of limitation did not apply to actions by the state." State v. Dalton, 182 S.W.2d 311, 312 (Mo. 1944). This common-law doctrine, nullum tempus occurrit regi, barred all

statutes from running against claims by the state. Missouri enacted legislation that abrogated that common law doctrine. See Mo. Rev. Stat. § 516.360 (1994). The statute, however, expressly restricts abrogation of the common law rule to actions brought by the State of Missouri:

> The limitations prescribed in sections 516.101 to 516.370 [which includes the five-year statute of limitation] shall apply to actions brought in the name of this state, or for its benefit, in the same manner as to actions by private parties.

Id. (emphasis added). Because the legislature chose the phrase "this state" and not "any state," we read § 516.360 to subject only the State of Missouri to its general statutes of limitation. Section 516.360 thus does not apply to KPERS's suit because the statute's language does not apply its statutes of limitation to actions brought by other state governments, and KPERS is acting in a governmental capacity for the State of Kansas. We thus revert back to the common law doctrine that no statute runs against the state. Missouri's borrowing statute, however, which specifically applies to actions originating in other states, directs us to apply the statute of limitation from the state in which the cause originated if the period under that statute is shorter than it would be under Missouri law. See id. § 516.190. No period of limitation exists under Missouri statutory or common law with respect to actions by other state governments. We therefore must apply the shorter Kansas ten-year statute of limitation to determine whether the claims against Russell are barred.

Having filed its complaint against Russell on December 23, 1991, alleging claims based on conduct that occurred no earlier than 1985 or 1986, KPERS is well within the ten-year statutory period to bring this action. We therefore reverse the summary judgment granted to Russell and remand the case to the District Court for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.