

# In the Missouri Court of Appeals
# Eastern District

DIVISION TWO

| | | |
|---|---|---|
| 4021 IOWA, LLC, | ) | No. ED112681 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | Cause No. 2122-CC00025-01 |
| | ) | |
| K&A DELMAR PROPERTY, LLC, ET AL., | ) | Honorable Elizabeth B. Hogan |
| | ) | |
| Appellants. | ) | FILED: January 21, 2025 |

## Opinion

K&A Delmar Property, LLC (K&A), Daggett Property, LLC, Joseph K. Robbins, and Justin M. Hollensteiner (collectively, Appellants) appeal from the circuit court's reinstatement of default judgment in favor of Respondent 4021 Iowa, LLC (Iowa). Appellants raise three points on appeal. Point One argues the circuit court lacked jurisdiction to award damages in excess of what Iowa pleaded in its petition. Point Two contends the circuit court abused its discretion by awarding attorneys' fees that were not supported by sufficient evidence. Finally, Point Three maintains the circuit court erred by determining post-judgment interest accrued from the date the default judgment was originally entered because a superseding appeal required revising the accrual date. Because any issues with the scope of the pleaded damages did not divest the circuit court of jurisdiction over the case, we deny Point One. Appellants' argument that Iowa produced insufficient evidence in support of its request for additionally incurred attorneys' fees does not

warrant overturning the award in light of the circuit court's expertise in determining the reasonableness of such fees. Therefore, we deny Point Two. Because the circuit court properly found post-judgment interest accrued from the date the default judgment was originally entered, we deny Point Three. Accordingly, we affirm the circuit court's judgment.

Background

Iowa is the assignee and successor in interest to Blackline Real Estate, LLC (Blackline). On December 17, 2018, Blackline entered into a contract with K&A to purchase a commercial property. After the sale fell through, Iowa filed a petition against Appellants, alleging breach of contract, fraudulent misrepresentation, unlawful conspiracy, and alter ego.

Appellants failed to file an amended answer as directed by the circuit court, and Iowa subsequently secured a default judgment against Appellants on March 8, 2022. In support of the damages award, pursuant to the contract, Iowa submitted evidence of special damages and attorneys' fees via affidavits.

Nearly one year after the default judgment was entered, Appellants moved to set it aside on the grounds that the damages exceeded the pleadings, which the circuit court granted. Iowa then appealed, and this Court reversed and remanded for the circuit court to reinstate the default judgment because Appellants' motion to set it aside was untimely filed. *4021 Iowa, LLC v. K&A Delmar Prop., LLC*, 681 S.W.3d 309 (Mo. App. E.D. 2023). This Court noted the circuit court on remand did not need to hold a hearing on damages, as Appellants failed to preserve their challenge through their untimely motion. Nevertheless, the Court directed the circuit court to find the source of an apparent summation error in the damages award and correct it when reinstating the default judgment.

On remand, Iowa moved for the circuit court to reinstate the default judgment consistent with this Court's mandate. Iowa submitted affidavits in support of $67,338.08 in additional

2

attorneys' fees for opposing the motion to set aside, prevailing on appeal, and moving for the default judgment to be reinstated. Appellants attempted to reopen evidence as to damages and contested the amount of damages and attorneys' fees, arguing that actual damages should be limited to what was pleaded in Iowa's petition and that Iowa's requested attorneys' fees following the first appeal were not warranted. Following a hearing, the circuit court reinstated the default judgment on April 16, 2024. The circuit court adjusted the damages award to $245,216.46 in actual damages, reflecting its correction of the apparent summation error. The circuit court also awarded Iowa its requested additional attorneys' fees, $70 in costs as directed by this Court, plus interest and court costs. The judgment stated that $44,138.96 in post-judgment interest accrued since the entry of default judgment on March 8, 2022. This appeal follows.

Discussion

**I.      Point One—The Circuit Court's Jurisdiction Is Not Implicated In Its Award of Damages.**

Appellants assert the trial court lacked jurisdiction to enter judgment awarding damages exceeding the amount pleaded in the petition. Appellants' jurisdictional argument, which must precede any other inquiry, is not well taken.

There are only two categories of jurisdiction: personal and subject matter. *Ball v. Ball*, 638 S.W.3d 543, 549 (Mo. App. E.D. 2021) (citing *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252 (Mo. banc 2009)). Neither are implicated here. Over a decade ago, the Supreme Court clarified that the nebulous third concept of "jurisdictional competence" is not recognized in our state. *Webb*, 275 S.W.3d at 254; *accord State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468, 473 (Mo. banc 2018) (rejecting "the outdated concept of 'jurisdictional competence'"); *State ex rel. Zahnd v. Van Amburg*, 533 S.W.3d 227, 231 (Mo. banc 2017)

3

(reiterating the Court has "roundly rejected" the "antiquated concept of 'jurisdictional competence'"). Arguments in this category include precisely the argument raised by Appellants: that the circuit court "has proceeded 'beyond the allegations of the pleadings and the prayer for relief.'" *Webb*, 275 S.W.3d at 254 (quoting *In re Marriage of Hendrix*, 183 S.W.3d 582, 588 (Mo. banc 2006)). Such arguments "do not question the court's subject matter or personal jurisdiction and really go to the court's authority to render a particular judgment in a particular case." *Id.* (citing *Hendrix*, 183 S.W.3d at 588).

Where "[t]he present case is a civil case . . . the circuit court has subject matter jurisdiction, and, thus, has the authority to hear the dispute." *Karrenbrock Constr., Inc. v. Saab Auto Sales & Leasing, Inc.*, 540 S.W.3d 899, 902 (Mo. App. E.D. 2018) (quoting *Webb*, 275 S.W.3d at 254). The circuit court here had jurisdiction over the civil matter following remand. *See id.*; *Allen v. Atain Specialty Ins. Co.*, 585 S.W.3d 289, 293–94 (Mo. App. W.D. 2019) (quoting *Durwood v. Dubinsky*, 361 S.W.2d 779, 783 (Mo. 1962) (explaining an appellate court's mandate confers authority and jurisdiction back to the lower court "to take such steps as are directed")). The circuit court was not divested of jurisdiction due to the scope of petition's plea for damages. *See Karrenbrock Constr.*, 540 S.W.3d at 902 (citing *Webb*, 275 S.W.3d at 254); *see also, e.g., Puetz-Anderson v. Puetz*, 629 S.W.3d 95, 98 (Mo. App. E.D. 2021) (dismissing a point on appeal alleging a trial court lacked jurisdiction due to improper venue because "venue and subject matter jurisdiction are distinct concepts, and improper venue, while erroneous, does not divest a trial court of jurisdiction").

In their reply brief, Appellants attempt to course-correct by reframing their argument as one challenging the circuit court's ***authority*** rather than its ***ability*** to have entered judgment. Appellants essentially make the same plea as that made before this Court in *Karrenbrock*

4

*Constr.*, where the appellant argued in supplemental briefing that "the outcome of this case should not be controlled by semantics." 540 S.W.3d at 902 n.6. We rejected the argument that using the word "jurisdiction" carries no meaning then, and we reject it again now. *See id.* "[T]he requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts[;] [i]t is rooted in sound policy." *Id.* (quoting *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978)). One of the most important objectives of the point relied on "is the threshold function of giving notice to the party opponent of the precise matters which must be contended with and answered." *Thummel*, 570 S.W.2d at 686. Appellants are bound by their point on appeal and may not change the legal reason for reversal in their reply brief, as such a change "comes too late as arguments omitted from an initial brief may not be supplied by a reply brief." *State ex rel. Schmitt v. Schier Co., Inc.*, 594 S.W.3d 245, 253 n.15 (Mo. App. S.D. 2020) (declining to review points relied where the appellant failed to identify the specific standard of review under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) in its opening brief but attempted to correct the defect by identifying the standard in their reply brief); *Kohn v. Missouri Dep't of Revenue*, 565 S.W.3d 716, 719 n.4 (Mo. App. W.D. 2018) (internal citations omitted) (noting an argument raised for the first time in a reply brief is not preserved for appellate review). To allow Appellants to withdraw the very foundation of their point relied on—that the trial court lacked jurisdiction to enter its damages award—and proceed on a different legal theory would be inconsistent with our procedural rules and unfair to the respondent. *See Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022) (quoting *Thummel*, 570 S.W.2d at 686); *Schmitt*, 594 S.W.3d at 253 n.15; *Kohn*, 565 S.W.3d at 719 n.4.

Further, "the Missouri Supreme Court explained non-waivable jurisdictional arguments are distinct from waivable statutory authority arguments under its then-recent holding in [*Webb*]." *Ball*, 638 S.W.3d at 550 (citing *Hightower v. Myers*, 304 S.W.3d 727, 733 (Mo. banc 2010)). In *Ball*, where the appellant similarly stumbled over the fundamentals of jurisdiction despite repeated edits from the Supreme Court, this Court held that because the appellant preserved only a faulty jurisdictional argument and failed to preserve her reframed challenge to the trial court's authority to render the judgment, she waived review. *Id.* This Court stated: "[Appellant] cannot bootstrap unpreserved non-jurisdictional claims to a jurisdictional argument." *Id.* at 551. Similarly, here, Appellants never challenged the trial court's ***authority*** to enter the damages judgment until their reply brief, therefore such alternative argument is waived. *See id.*; *Karrenbrock Constr*, 540 S.W.3d at 902–03.

Because any issues with the scope of the pleaded damages did not divest the circuit court of jurisdiction over the case, we deny Point One. *See Karrenbrock Constr.*, 540 S.W.3d at 902 (citing *Webb*, 275 S.W.3d at 254).

## II.    Point Two—The Circuit Court Did Not Abuse Its Discretion In Its Award of Attorneys' Fees

In Point Two, Appellants contend the circuit court abused its discretion in awarding Iowa attorneys' fees because the amount was not supported by the evidence as to the reasonableness, nature, and character of the legal services provided. We disagree.

Standard of Review

"[T]rial courts have broad discretion in awarding attorney[s'] fees, and we will not overturn their award unless the trial court abused its discretion." *Heritage Roofing, LLC v. Fischer*, 164 S.W.3d 128, 135 (Mo. App. E.D. 2005) (internal citation omitted). "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision

6

was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Cupit v. Dry Basement, Inc.*, 592 S.W.3d 417, 425 (Mo. App. W.D. 2020) (quoting *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 431 (Mo. banc 2013)).

"An award of attorney[s'] fees is presumed to be correct, and the complaining party has the burden to prove otherwise." *Id.* at 425–26 (citing *Hill v. City of St. Louis*, 371 S.W.3d 66, 81 (Mo. App. E.D. 2012)). "The trial court is deemed an expert at fashioning an attorney[s'] fees award because it tries the case and is acquainted with all of the issues." *Id.* at 425 (citing *Berry*, 397 S.W.3d at 430–31; *Essex Contracting, Inc. v. Jefferson Co.*, 277 S.W.3d 647, 656 (Mo. banc 2009)). "In the absence of a contrary showing, the trial court is presumed to know the character of services rendered in duration, zeal, and ability and the value of them according to custom, place, and circumstance." *Id.* (citing *Essex Contracting*, 277 S.W.3d at 656).

<u>No Abuse of Discretion Arises from Challenge to Attorneys' Evidence of Fees</u>

Here, the parties agree that the contract provided for reasonable attorneys' fees. When the circuit court entered the default judgment against Appellants on March 8, 2022, after receiving Iowa's affidavits as to damages and attorneys' fees, it awarded Iowa $5,414.08 in attorneys' fees. Appellants do not contest this amount. After the circuit court granted Appellants' motion to set aside the default judgment, which Iowa litigated against, Iowa appealed and secured a reversal and remand with a mandate for the circuit court to reinstate the default judgment. Iowa moved for the circuit court to reinstate the default judgment and submitted affidavits in support of additional attorneys' fees that accrued since the original entry of default judgment. Appellants contested the additionally incurred fees. Following a hearing on Iowa's motion to reinstate the default judgment, the circuit court reinstated the default judgment and awarded Iowa $67,338.08 in attorneys' fees.

Appellants allege the circuit court abused its discretion by awarding attorneys' fees for which Iowa adduced insufficient evidence through affidavits. However, an award of attorneys' fees is not subject to the same evidentiary-support review as determining whether the judgment itself lacks substantial evidence to support it, is against the weight of the evidence, or erroneously declares or applies the law. *See, e.g., Parkway Constr. Servs., Inc. v. Blackline LLC*, 573 S.W.3d 652, 664, 666 (Mo. App. E.D. 2019) (internal citations omitted) (reviewing a breach-of-contract bench trial case under *Murphy v. Carron* overall but reviewing the award of attorneys' fees for an abuse of discretion). Appellants acknowledge that their point is reviewed for an abuse of discretion by the circuit court, however, they focus on the alleged failure by Iowa's attorneys to adduce sufficient evidence in support of the requested fees. Such an argument fatally neglects to consider that courts are deemed to be experts at determining reasonable attorneys' fees ***with or without evidence from the attorney***. Critically, "[t]he trial court is considered an expert on fees, given its familiarity with all of the issues in the case and with the character of the legal services rendered, and may determine attorney fees ***without the aid of evidence.***" *Alhalabi v. Missouri Dep't of Corr.*, 662 S.W.3d 180, 194 (Mo. App. W.D. 2023) (quoting *Terpstra v. State*, 565 S.W.3d 229, 249 (Mo. App. W.D. 2019)) (emphasis added). In no way does this mean that courts determine attorneys' fees in a vacuum; rather, the court is already familiar with the legal work done before it in the case and is presumed to properly assess the reasonableness of the attorneys' fees, such as applying the lodestar method. *See id.*; *Tepestra*, 565 S.W.3d at 250 (quoting *Berry*, 397 S.W.3d at 431) ("While the trial court has discretion to award reasonable attorneys' fees, there are factors that may be considered to determine the amount of attorneys' fees to award."). "The 'lodestar' is the starting point in determining reasonable attorneys' fees." *Alhalabi*, 662 S.W.3d at 194 n.6 (quoting *Harrison v.*

8

*Harris-Stowe State Univ.*, 626 S.W.3d 843, 860 n.5 (Mo. App. E.D. 2021)). "The lodestar is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate." *Id.* at 194 (quoting *Terpstra*, 565 S.W.3d at 250).

> Relevant factors in determining the reasonable value and amount of . . . fees include (1) the rates customarily charged by the attorneys in the case and other attorneys in the community for similar services; (2) the number of hours reasonably expended on the litigation; (3) the nature and character of the services rendered; (4) the degree of professional skill required; (5) the nature and importance of the subject matter of the litigation; (6) the amount involved or the result obtained; and (7) the vigor of the opposition.

*Id.* (citing *Wilson v. City of Kansas City*, 598 S.W.3d 888, 896 (Mo banc. 2020); *Berry*, 397 S.W.3d at 431; *Terpstra*, 565 S.W.3d at 250).[1]

Here, Iowa submitted affidavits seeking $67,338.08 in additional attorneys' fees incurred through opposing Appellants' motion to set aside the default judgment, appealing from the order setting aside the default judgment and prevailing on that appeal, and moving for the reinstatement of the default judgment on remand. While the 2022 affidavit in support of fees for the default judgment estimated $250 per hour, the 2024 affidavits in support of fees on remand claimed between $300 and $400 per hour for 195 hours of work on the above-mentioned litigation. Before granting Iowa's motion to reinstate the default judgment, the circuit court

---

[1] The recently enacted Mo. R. Civ. P. Rule 74.16 requires an attorney to timely file a motion that (1) specifies the statute, rule, or other ground entitling the movant to the award and (2) states the amount sought. We certainly would agree that it is best practice for an attorney to submit an affidavit in support of their Rule 74.16 motion for fees that competently and thoroughly attests to the legal work done and fees accrued, but Appellants direct us to no rule of law requiring any specific quantum of evidence, nor is one likely to exist given that a circuit court "may determine attorney fees without the aid of evidence." *Alhalabi*, 662 S.W.3d at 194 (quoting *Terpstra*, 565 S.W.3d at 249). As Appellants note, a circuit court's discretion to award attorneys' fees is not unfettered, and guardrails exist as the court presumably does not draw up an award from thin air but instead interprets the fairness of the proposed hourly rate and work performed on a case-by-case base. *See id.* (citing *Wilson*, 598 S.W.3d at 896); *see also, e.g., Selleck v. Keith M. Evans Ins., Inc.*, 535 S.W.3d 779, 787 (Mo. App. E.D. 2017) (rejecting a blanket rule that a trial court is limited to calculating an award of attorneys' fees by determining the lodestar amount and may not also consider a pre-existing contingent-fee agreement, while affirming that the appropriateness of such an award is dependent upon the circumstances presented before the trial court). In this case, we need not stretch so far in our holding as to state that Iowa need not have submitted any evidence, as Iowa did submit affidavits to aid the circuit court in its determination of the reasonableness of their requested fees.

9

heard Appellants' arguments against Iowa's requested attorneys' fees and elected to award the full amount. Had the circuit court found Appellants' arguments about the insufficiencies of the 2024 affidavits meritorious, it could have ordered Iowa to supplement its affidavits with additional line-item documentation of the legal work completed in the case. It chose not to do so, but was instead satisfied with the affidavits and its own expertise in determining the reasonableness of the requested attorneys' fees. Given that expertise and broad discretion, Appellants have not met the burden to prove the award of fees was incorrect and should be overturned. *See Cupit*, 592 S.W.3d at 425–26 (citing *Hill*, 371 S.W.3d at 81); *Heritage Roofing*, 164 S.W.3d at 135 (internal citation omitted). We deny Point Two.

## III. Point Three—Post-Judgment Interest Began Accruing On The Date The Original Default Judgment Was Entered.

In their third point on appeal, Appellants maintain the circuit court erred in determining that post-judgment interest accrued since the date of the original entry of the default judgment as opposed to the date on which the circuit court reinstated the default judgment. We find no error in the circuit court's determination.

Standard of Review

"Determining the date from which post-judgment interest is due is a question of law that we review *de novo*." *Kelly v. Bass Pro Outdoor World, L.L.C.*, 426 S.W.3d 675, 678 (Mo. App. E.D. 2013) (citing *Lindquist v. Mid Amer. Orthopedic Surgery, Inc.,* 224 S.W.3d 593, 594–95 (Mo. banc 2007)) (additional citation omitted).

Circuit Court Properly Determined the Date from which Post-Judgment Interest Accrued

The circuit court properly complied with this Court's mandate by specifying post-judgment interest accrued from the date of the reinstated default judgment.

10

Rule 84.28[2] governs a circuit court's authority on remand:

> The court, upon the determination of any cause on appeal, may award execution to carry the same into effect, or may remand the cause with its decision therein, including any judgment or order as to costs made by the appellate court, to the court from which the cause was appealed, and such determination shall be carried into execution by that court.

Rule 84.28; § 512.160.5[3] (same). "There are two types of remand—(1) a general remand and (2) a remand with directions that 'requires the trial court to enter a [particular] judgment in conformity with the mandate.'" *T.J.W. v. K.T.*, 660 S.W.3d 451, 459 (Mo. App. S.D. 2022) (quoting *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 633 (Mo. banc 2013)) (alteration in original). "Generally, a remand 'for further proceedings in accordance with the opinion' is a general remand 'because in every case of remand further proceedings should be "in accordance with the opinion" whether or not that admonition is appended.'" *Id.* (quoting *Smith*, 410 S.W.3d at 633). In contrast, "[w]here a judgment is reversed and remanded with specific directions to enter a particular judgment, the mandate is in the nature of a special power of attorney and must be followed by the trial court without deviation[.]" *Smith*, 410 S.W.3d at 633 (internal quotation omitted).

> Where the judgment of an appellate court calls for the remand of the cause to the trial court for further action the judgment is not self-executing but must be certified back to the trial court for execution. This is done in this state by what is called the mandate, and by it authority and jurisdiction is granted to the lower court to take such steps as are directed.

*Allen*, 585 S.W.3d at 293–94 (quoting *Durwood*, 361 S.W.2d at 783). "On remand, proceedings in the trial court should be in accordance with both the mandate and the result contemplated in the opinion." *T.J.W.*, 660 S.W.3d at 460 (internal quotation omitted). "The mandate serves the

---

[2] All Rule references are to Mo. R. Civ. P. (2024).
[3] All statutory references are to RSMo (2016), unless otherwise noted.

purpose of communicating the judgment to the lower court, and the opinion, which is a part thereof, serves in an interpretative function." *Id.* (internal quotation omitted).

Here, this Court's prior opinion concluded: "The judgment of the circuit court is reversed, and the case is remanded to the circuit court with instructions to reinstate the default judgment and make any necessary recalculations of the damages award consistent with this opinion." *4021 Iowa*, 681 S.W.3d at 319.[4] This Court's mandate, in addition to awarding the cost of the appeal, stated that the cause was "reversed and remanded to the aforesaid court with instructions to reinstate the default judgment and make any necessary calculations of the damages award in accordance with this Court's opinion." On remand, on April 16, 2024, the circuit court reinstated the default judgment, awarded the $70 cost of the appeal, adjusted the total summed damages in accordance with the appellate court's opinion and mandate, awarded additionally incurred attorneys' fees (as discussed in Point Two), and specified that post-judgment interest accrued since the date of the default judgment, March 8, 2022. Appellants' Point Three challenges the post-judgment interest accrual date.

Interest on judgments is governed by § 408.040:

> In all nontort actions, interest shall be allowed on all money due upon any judgment or order of any court from the date judgment is entered by the trial court until satisfaction be made by payment, accord or sale of property; all such judgments and orders for money upon contracts bearing more than nine percent interest shall bear the same interest borne by such contracts, and all other judgments and orders for money shall bear nine percent per annum until satisfaction made as aforesaid.

---

[4] Contrary to Appellants' argument, the Court did not remand the cause for a hearing on Appellants' arguments against the damages award, but rather limited the recalculation of damages solely to an apparent summation error. "We acknowledge a discrepancy of $12,233.46 in the default judgment between the itemized damages and fees and their summed total." *Id.* This Court noted it could correct the mathematical error itself but "because we are already remanding this matter to the circuit court for the reinstatement of the default judgment, and because we do not know whether the error originates in the total or in the itemized damages, the circuit court may also perform any necessary recalculations to correct the apparent summation error." *Id.* The Court was explicit that "the circuit court **need not hold a hearing on damages,** because the award was supported by evidence in the form of Iowa's affidavits" and because Appellants waived their challenge to damages by untimely moving to set aside the default judgment. *Id.* at 319 n.5 (emphasis added).

§ 408.040.2.

A similar issue was presented in *Reimers v. Frank B. Connet Lumber Co.*, 273 S.W.2d 348 (Mo. 1954) (per curiam). There, the trial court entered judgment in favor of the plaintiff following a trial. *Id.* at 349. The trial court subsequently granted the defendant's motion for a new trial. *Id.* The plaintiff appealed from the trial court's order granting a new trial. *Id.* On this first appeal, the Supreme Court agreed with the plaintiff that the trial court erred in granting a new trial, concluding: "It follows that the trial court's order granting defendant a new trial is reversed with directions to reinstate the verdict and judgment for plaintiff." *Id.* The Supreme Court's mandate likewise called for reversal, remand, and reinstatement of the judgment in plaintiff's favor as well as to allow the plaintiff to recover costs and charges incurred on appeal. *Id.* On remand, the trial court reinstated the judgment but did not include any provision regarding post-judgment interest. *Id.* The plaintiff moved to have the judgment amended, alleging the trial court failed to specify that the defendant owed interest dating back to the original judgment. *Id.* Back up on appeal, the Supreme Court agreed with the plaintiff that interest accrued since the date of the original judgment, stating as follows:

> We think our mandate is clear and unambiguous and that there can be no question that under that mandate plaintiff's verdict and judgment were 'reinstated' as of May 24, 1952, the date on which the judgment was rendered. When this court held that the order of the trial court setting aside the verdict and judgment was an erroneous order, ***the effect was to hold that the judgment was in fact never effectively lost but always in fact existed.*** The effect of our opinion and mandate was in reality to affirm the judgment as entered on May 24, 1952. ***And, of course, a judgment bears interest from the date of rendition.***

*Id.* (emphases added).[5]

---

[5] The Supreme Court ultimately denied the plaintiff's motion to amend the judgment because it believed such an amendment would be superfluous, in that the judgment sufficiently conformed to the mandate and required defendant to pay interest dating back to the date of the original judgment. *Id.*

13

Relatedly, *Crystal Tire Co. v. Home Serv. Oil Co.*, 507 S.W.2d 383 (Mo. 1974) reached a similar result where at issue was the date from which post-judgment interest accrued. *See Stacy v. Truman Med. Ctr.*, 836 S.W.2d 911, 928 (Mo. banc 1992), *abrogated on other grounds by Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. banc 2008) (describing *Crystal Tire* as "[t]he leading case on the accrual of post-judgment interest for a verdict returned in favor of plaintiff, later set aside and finally reinstated"). In *Crystal Tire*, the plaintiff secured a favorable jury verdict against two defendants, but the trial court did not accept the verdict and directed the jury to continue deliberations. The jury's second verdict found for plaintiff against only one defendant, and the trial court entered judgment on the second verdict. *Id.* at 383. The plaintiff appealed, and the Supreme Court held the trial court erred in refusing to accept the first verdict and reversed and remanded the cause with directions for the trial court to accept the first verdict and enter judgment in favor of plaintiff against both defendants. *Id.* at 383–84. The mandate reversed the trial court's judgment, stating the plaintiff was "restored to all things which it has lost by reason of the said judgment[,]" and remanded the cause for further proceedings in conformity with the opinion. *Id.* However, the defendants argued they did not owe post-judgment interest dating back to the date the verdict was rendered. *Id.* The Supreme Court ruled interest did accrue since the date the verdict was rendered rather than from the date the judgment was entered on remand. Interpreting §§ 510.340 and 408.030, RSMo (1969), governing the entry of judgments and interest on judgments, respectively, the Supreme Court reasoned that "even though the judgment was not in fact made of record until [the date it was entered on remand] . . . the judgment was entered 'as of' [the date the jury reached its verdict], and a judgment bears interest 'from the date of renders the same until satisfaction be made by payment.'" *Id.* "Therefore, when the ministerial act of entering the judgment was performed

14

pursuant to the mandate of this [C]ourt, the judgment was rendered as of the date of the verdict, and it bears interest from that date."

As in *Reimers*, this Court's opinion and mandate directed the circuit court to reinstate a judgment, specifically, to reinstate the default judgment. Although Appellants suggest that a new judgment replaces an old judgment following remittitur, relying exclusively on *Stolze v. St. Louis Transit Co.*, 99 S.W. 471, 471 (Mo. App. S.L.D. 1906), no remittitur occurred in this case. Instead, the opinion and mandate reinstated the default judgment, and reinstatement means the default judgment "always in fact existed." *See Reiners*, 273 S.W.2d at 349; *cf. Crystal Tire*, 507 S.W.2d at 384 (mandating the plaintiff on remand "be restored to all things which it has lost by reason of the [trial court's erroneous] judgment"); *Bd. of Regents for Sw. Missouri State Univ. v. Harriman*, 857 S.W.2d 445, 449 (Mo. App. S.D. 1993) (finding the reversal of an order setting aside the default judgment "restored" the right to have the debt paid). Correspondingly, because interest accrues "from the date judgment is entered by the trial court until satisfaction be made by payment" under § 408.040.2, here, as in *Crystal Tire* and *Reiners*, interest accrued since the date the default judgment was originally entered. *See Crystal Tire*, 507 S.W.2d at 384; *Reiners*, 273 S.W.2d at 349. Accordingly, the circuit court did not err in reinstating the default judgment and specifying that post-judgment interest accrued on the amount in that judgment since its entry on March 8, 2022. Point Three is denied.

## Conclusion

The judgment of the circuit court is affirmed.

_____
Rebeca Navarro-McKelvey, J.

15

Lisa P. Page, P.J. and
Thomas N. Chapman, Sp.J., concur.